# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JONAS C. SANTAELLA**
**United States Army, Appellant**

ARMY 20230540

Headquarters, Fort Drum
James Barkei and Alyssa S. Adams, Military Judges
Lieutenant Colonel Jessica M. Farrell, Staff Judge Advocate

For Appellant: Major Andrew M. Hopkins, JA (argued); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; (on brief and reply brief).

For Appellee: Captain Teri'el M. Dixon (argued); Colonel Richard E. Gorini, JA; Major Marc B. Sawyer, JA; Captain Andrew T. Bobowski, JA (on brief).

20 February 2026

------------------------------
MEMORANDUM OPINION
------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

Appellant sat in his car near several cabins on Fort Drum, conversing with an individual he believed to be the guardian of a fourteen-year-old advertised on a sex-for-pay website. Unbeknownst to appellant, the purported guardian was a member of law enforcement. Shortly before the police concluded the sting operation, appellant remarked, "If you are legit, I am so sorry" and started his car. He was subsequently arrested.

Later, at trial, the military judge allowed the government to introduce lay opinion testimony from several members of law enforcement—that prior to idling in front of the sting cabin, appellant drove around the cabins, appearing to "case" the

area as a means to conduct counter surveillance for any potential law enforcement presence in the area—under Military Rule of Evidence [Mil. R. Evid.] 701.

A military judge, sitting as a general court-martial, ultimately convicted appellant, contrary to his pleas, of one specification of attempted sexual assault of a minor, one specification of attempted sexual abuse of a minor,[1] and one specification of attempted forcible pandering of a minor, all in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for forty-eight months, and reduction to the grade of E-1.

Appellant raises numerous errors on appeal, two of which, whether appellant voluntarily abandoned his criminal conduct prior to his arrest and whether the military judge erred in allowing speculative lay opinion testimony, warrant discussion. For the reasons set forth below, however, we determine that neither issue warrants relief and affirm the guilty findings and sentence.[2]

## BACKGROUND

In late September 2022, appellant accessed a sex-for-pay website entitled "skipthegames.com," where he came across a posting entitled: "New in town [purple devil emoji] SO fresh and clean [squirty emoji] Military Special." Despite its illicit nature, the posting was created by law enforcement and included photographs of an adult U.S Army Criminal Investigation Division (CID) special agent. After appellant messaged the listing, however, the agent indicated that the advertisement was for her fourteen-year-old "stepdaughter," who despite being under the age of consent, was available to engage in sexual acts for a fee.

Over the next several days, appellant made numerous attempts to verify that the poster was not a member of law enforcement. In addition to repeated queries,[3] appellant asked the poster to send images of the stepdaughter, including some of her

---

[1] The guilty finding for attempted sexual abuse of a minor was conditionally dismissed by the military judge, without prejudice, to ripen into prejudice upon completion of appellate review.

[2] We have given full and fair consideration to the other matters raised by appellant, personally, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

[3] At various points, appellant texted: "You have another way to prove this is legit and not entrapment," "Are you affiliated with any cops," "I'm just afraid I'm walking into a sting," "Just being very precautious cause you know, your stepdaughters age," but that "if you're legit and staying at drum id definitely keep paying".

engaging in sexual acts with another person.[4] Throughout the exchange, appellant maintained he wanted to engage in sexual acts with the poster's stepdaughter. When the poster indicated appellant's repeated inquiries were making her "nervous," appellant responded: "Im nervous because I'm going to have sex with a 14 yr old lol." Shortly before driving to meet with the poster at a cabin on Fort Drum appellant affirmed his intent to have sex with an individual whom he believed to be a minor, texting the poster, "I'm trying to f*** your daughter lady."

Appellant drove to a visitors' center near the cabin, parked, then circled the general area around the cabins in his car, before returning to the visitors' center. After texting with the poster, including sending several photographs of the surrounding area taken by appellant, appellant approached the agreed upon cabin and turned off his vehicle on an access road directly in front of the cabin.

Appellant, who remained in his car, and the undercover agent, who was on the cabin's front porch, spoke in person. Appellant continued to try and verify whether the poster was law enforcement, at one point telling the poster, "If you are legit, I am so sorry." Appellant and the poster continued to speak for approximately one more minute. At that point, an unmarked vehicle operated by other law enforcement agents approached appellant's car. As the vehicle approached, appellant started his vehicle but was arrested before he could drive away. Appellant was subsequently charged with multiple offenses related to his efforts to engage in sexual acts with a minor.

During trial, the government called multiple law enforcement officers as witnesses. One, a CID special agent, testified over defense objection that appellant drove around the cabins:

> based on [his] training and experience . . . [appellant] was driving around the cabin in order to identify if there was anything out of place or seemed out of place to him. A lot of times you'll hear law enforcement say someone is "casing the area." He was probably trying to see if that area was what was advertised.

Another law enforcement officer, a member of the state police, testified that, based on his "training and [ten or eleven years of] experience," in his opinion, appellant's drive around the cabins "indicate[d] that . . . [appellant] was doing counter surveillance, driving around looking for law-enforcement-looking vehicles." Per the officer, actions like appellant's were "common in these types of investigations.

---

[4] Appellant also requested additional, non-sexual photographs of the stepdaughter. Law enforcement provided him with "age regressed" photographs of an adult agent in response.

People drive through to see if they spot anything out of the ordinary." The officer further opined:

> sometimes people are fearful that . . . they're going to be arrested, so they want to check out every angle, make sure that they don't see anything that would arise suspicion. And [appellant's actions] indicate that the person had done some counter surveillance and had driven around the campground to make sure they didn't see anything they didn't like.

Unlike before, defense counsel did not object to this testimony.

## LAW AND DISCUSSION

### A. Voluntary Abandonment

We find the findings of guilt correct in fact, and that once raised by the appellant at trial, the government disproved the defense of voluntary abandonment beyond a reasonable doubt.

Voluntary abandonment is "an affirmative defense to a completed attempt," *United States v. Schoof*, 37 M.J. 96, 103 (C.A.A.F. 1993),"[5] when an accused "voluntarily and completely abandon[s] the intended crime, solely because of the person's own sense that it [is] wrong, prior to the completion of the crime." *Manual for Courts-Martial, United States* (2019 ed) [*MCM*], pt. IV ¶ 4.c.(4). The defense does not exist, however, "if the abandonment results, in whole or in part, from other reasons, for example, the person feared detection or apprehension." *Id.* Nor does it apply if the renunciation "is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim." *United States v. Byrd*, 24 M.J. 286, 291 (C.M.A. 1987). Instead, the abandonment must be motivated by a "change of heart." *United States v. Rios*, 33 M.J. 436, 440 (C.A.A.F. 1991).

Appellant's comment, "If you are legit," is dispositive to our analysis. Appellant's actions prior to approaching the cabin—his conversations with the undercover poster and his "surveillance" of the cabin area, discussed *infra*—clearly evidence a fear of apprehension. While appellant's later actions in starting his car and telling law enforcement "I am so sorry" evidenced an intent to call off his sexual

---

[5] Generally, this court's factual sufficiency review is limited. *See United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024) (noting a "specific showing of a deficiency in proof" is required for a court of criminal appeals to conduct a factual sufficiency review (internal quotations omitted) (citation omitted)).

rendezvous with a minor, the evidence the government proffered proves beyond a reasonable doubt that this abdication was not solely motivated by a change of heart regarding the immorality of his actions. Rather, he was concerned that the meet-up was what it actually was—an undercover law enforcement operation. In other words, we do not find that he intended to "completely abandon[]" his plans to sexually assault a minor, rather that he merely intended to abandon his plan to do so *at that moment*. *MCM*, pt. IV ¶ 4.c.(4)

### B. Lay Opinion Testimony

Appellant next alleges the military judge erred by allowing two law enforcement officers to offer expert testimony, couched as lay opinion evidence, at trial.

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a).

> For nonconstitutional evidentiary errors, the test for prejudice "is whether the error had a substantial influence on the findings." In conducting the prejudice analysis, this Court weighs: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question."

*United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (first quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017); and then quoting *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015)).

Assuming *arguendo* the military judge erred, either by allowing the government to (1) offer improper lay opinion testimony[6] or (2) offer expert

---

[6] Lay opinion testimony is generally disfavored, however, it may be offered if it is: "(a) rationally based on the witness' perception; (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [expert testimony]." Mil. R. Evid. 701. "It is generally held . . . that opinion testimony is not helpful where it does no more than instruct the factfinder as to what result it should reach." *Norman*, 74 M.J. at 149 (internal quotations omitted) (citation omitted).

5

testimony couched as lay witness testimony,[7] such error did not prejudice a substantial right of appellant. The government's case was strong, and appellant's weak. Appellant was arrested outside of the cabin where he had endeavored to sexually assault a minor. Moreover, the messages exchanged between appellant and the undercover officer posing as the purported minor's guardian clearly established his intent to commit said acts.

The evidentiary value of the evidence in question was weak. The police officers' characterization of appellant's actions as "casing" the area or engaging in "counter surveillance" were simply their opinions, which the factfinder was free to either accept or reject. Moreover, trial counsel would have been free to raise those same points in argument, even without the challenged testimony.[8] In other words, the law enforcement testimony, permissive or not, clearly articulated what counsel could have argued, particularly in the context of appellant's text-message concerns to the undercover law enforcement agent. It did not create a prejudicial "gloss of criminal sophistication" through which the military judge misconstrued appellant's conduct, as counsel claimed during oral argument.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Senior Judge MORRIS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[7] A party cannot evade the foundational and reliability requirements of Mil. R. Evid. 702 merely by having a would-be expert render an opinion as a lay witness. *See* Steven A. Saltzburg, et al., *Military Rules of Evidence Manual*, § 701.02[3] (10th ed. 2025).

[8] Counsel are free to argue both evidence in the record and that which "is a reasonable inference fairly derived from that evidence." *United States v. Halpin*, 71 M.J. 477, 482 (C.A.A.F. 2013) (citation omitted).